Norman Steiner (NS 6577)
Steiner & Fish P.C.
*Attorneys for Plaintiff*
130 Water Street
Brooklyn, New York  11201
(212) 869-1040
norm@steinerfish.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MMA FIGHTER MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> BALLENGEE GROUP, LLC, and LLOYD PIERSON, <br><br> Defendants. | Civil Action No. 19-cv-11276 (AKH) <br><br> SECOND AMENDED COMPLAINT |

"The foundation stones for a balanced success are honesty, character, integrity, faith, love and loyalty."

-- Zig Ziglar

Plaintiff MMA Fighter Management, Inc., by its attorney, Steiner & Fish P.C., for its complaint against defendants, Ballengee Group, LLC, and Lloyd Pierson (together, "Defendants"), alleges as follows:

## I.  PRELIMINARY STATEMENT

1. This is an action for intentional interference with a contract, unjust enrichment, *quantum meruit*, and injunctive relief as a result of Defendants' unlawful actions.

1

2. Plaintiff MMA Fighter Management, Inc. ("Plaintiff") is a relatively new and up-and-coming combat sports athlete representation business. It built its success through personal relationships, care for the physical and emotional well-being of its clients, and loyalty. Unlike Defendant Ballengee Group LLC, Plaintiff spent years and countless hours working with amateur athletes and, often, with professional athletes for no compensation.

3. Consistent with its pattern and practices, Defendant Ballengee Group, LLC, a larger, longer-running, and greater revenue business than Plaintiff – through its agent Defendant Lloyd Pierson – wrongfully stole Plaintiff's client, professional mixed martial artist Shane Burgos, knowing full well that Plaintiff had a contractual and fiduciary relationship with Plaintiff. Shane Burgos, who never complained about Plaintiff's efforts for him, and who publicly and privately held Plaintiff's principal, David Fish, to be a trusted friend, breached his agreement with Plaintiff, without notice or warning – all for false promises of greater wealth and fame by Defendant Lloyd Pierson.

## II.   PARTIES

4. Plaintiff is an athlete management and services business incorporated in the State of New York and has its principle place of business in Nassau County in the State of New York.

5. Defendant Ballengee Group, LLC ("Ballengee") is an athlete management business and Limited Liability Company registered in the State of Texas, and has its principle place of business in Dallas, Texas.

6. Ballengee has two members: James H. Ballengee and Defendant Lloyd Pierson ("Pierson").

7. James H. Ballengee is a citizen of the State of Texas.

8. Pierson is a member and managing principal of Ballengee and acted on its behalf at all relevant times.

9. Pierson is a citizen of the State of Texas.

10. Shane Burgos ("Burgos") is an individual who resides in Orange County in the State of New York.

### III.   JURISIDCTION AND VENUE

11. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a).

12. This matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

14. This Court has personal jurisdiction over Defendants because they systematically and continually conduct business throughout New York.

15. Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in this District, and Shane Burgos resides in this District.

### IV.   THE FACTS

16. Burgos originally received his martial arts training from a Tiger Schulmann's Martial Arts school in his hometown in Orange County, New York.

17. As Burgos became more skilled and proficient in his local martial arts training and competition, he began training at Tiger Schulmann's Martial Arts fight team headquarters

under the direction of Daniel "Tiger" Schulmann.

18. For more than a decade, Mr. Schulmann sought the professional advice of David Fish (the owner and president of Plaintiff), as extended counsel for Burgos and many other Tiger Schulmann's fighters.

19. On or about May 23, 2013, Burgos signed a Management and Representation Agreement (the "Agreement") with Schulmann Fight Management, LLC ("Schulmann").

20. The Agreement provides that Plaintiff (through Fish), as an agent for Schulmann, may act as Burgos's manager.

21. Fish and Burgos signed the Agreement.

22. Burgos was informed that Schulmann and Plaintiff shared Schulmann's compensation under the Agreement.

23. In fact, Schulmann and Plaintiff shared Schulmann's compensation under the Agreement.

24. The Agreement remains in effect until at least May 22, 2023.

25. All Defendants were aware that the Agreement remains in effect until at least May 22, 2023.

26. Plaintiff's commitment to Burgos began in late 2012 to early 2013, when Burgos transitioned from an amateur to a professional mixed martial artist.

27. From 2013 to early 2016, Plaintiff provided services to Burgos for little or no compensation.

28. At all times from 2013 to 2017, Plaintiff's expenses in connection with his services for Burgos exceeded his compensation for his services for Burgos.

29. After Burgos achieved a 7-0 professional record under Schulmann and Plaintiff,

Plaintiff negotiated an Ultimate Fighting Championship ("UFC") contract for Burgos.

30. On November 24, 2016, Fish, dressed in a Santa Claus outfit, hand-delivered the UFC contract to Burgos, surrounded by the Burgos family.

31. Since then, Burgos – though his ability, training, and support from Plaintiff and coaches – steadily climbed the ranks of the UFC featherweight division.

32. As of the date of this Complaint, Burgos is ranked number 12 in the UFC featherweight division.

33. Plaintiff worked hard to negotiate favorable fights for Burgos, including keeping the overwhelming majority of Burgos's fights in New York so that his family and friends would be able to support him without great expense.

34. A UFC fighter that fights primarily in his home state or within driving distance is very unusual considering the UFC is a global organization.

35. Outside of MMA manager duties, Plaintiff has also extended the courtesy of legal advice and counsel to Burgos, as well as many of his close friends and family members at a discounted rate or free of charge.

36. When Burgos purchased a home in 2018, Fish served as the closing attorney on a pro bono basis, and hired his own co-counsel to assist.

37. Plaintiff also ensured that Burgos was managing his weight in a safe and healthy manner.

38. Plaintiff handles a long list of fight week details for Burgos including weigh-in preparation, healthy rehydration, travel accommodations for Burgos and coaches, media and press relations, scheduling for meetings and media opportunities, and ensuring that any extraneous stressors do not impact his mental and physical preparation.

39. Plaintiff has also negotiated and acquired other providers that benefit Burgos in his career, such as obtaining a relationship with a strength and conditioning coach, a dentist, a sports psychologist, and a physical therapist.

40. Burgos received these services at little or no cost to him as a result of Plaintiff's concern for Burgos not having health or dental benefits, despite Burgos's personal choice and ability to acquire them on his own.

41. For the second year in row, in 2019, Plaintiff negotiated a fight for Burgos at Madison Square Garden in New York City. It was to be the last fight on Burgos's second UFC contract.

42. Burgos expressed a desire to negotiate for a new contract before his November 2, 2019 Madison Square Garden fight.

43. Plaintiff convinced Burgos to fight this last fight on his UFC contract before negotiating for a new one because, Fish stated, "I'm betting on you. I believe in you." In essence, waiting until after a win, and becoming a free-agent, put Burgos in a superior negotiating position.

44. Burgos changed his mind and listed to Plaintiff's advice.

45. Burgos won his bout.

46. Plaintiff's strategy worked, as Pierson saw dollar signs for himself after Burgos's fight.

47. Pierson contacted Burgos, and Burgos and Pierson conspired to leave Plaintiff, in breach of the Agreement.

48. Burgos was aware that, in 2017, Burgos's teammate and friend, Jimmie Rivera, breached a Schulmann agreement that Plaintiff was a beneficiary of, and no legal action was

6

taken. In that instance, Ballengee and Pierson also intentionally interfered with Schulmann's and Plaintiff's contractual relationships.

49. Back on or about February 18, 2019, Pierson told Mr. Schulmann that he could take Plaintiff's clients anytime he wanted, and specifically referenced UFC athletes, Julio Arce, Lyman Good, and Burgos.

50. This was communicated to Plaintiff, but Plaintiff did not address it because it had accepted the lack of morality in the industry and, more importantly, trusted the mutual loyalty of its clients.

51. On November 25, 2019, after Burgos and Fish completed a strength and conditioning session (at a facility that trains Burgos at no cost as a result of Plaintiff's negotiations), Burgos stated that he believed the percentage he pays to Plaintiff is too much and other agencies charge less.

52. Fish immediately responded that he would match whatever any other agency would charge and make any changes that Burgos felt he needed.

53. Fish also reminded Burgos that he previously attempted to give Burgos a discount on Plaintiff's fee, but Burgos refused.

54. Burgos ended the conversation by saying he had not yet made up his mind on what he was doing, but cherished Fish as a friend and training partner and "love[s]" him no matter what.

55. That was the last conversation between Fish and Burgos.

56. To this day, Burgos has not expressed any formal decision to leave Schulmann and Plaintiff's services.

57. However, Burgos's actions have suggested that he has breached the Agreement.

58. Upon information and belief, Burgos has told other individuals of his plan to join Ballengee.

59. Neither Burgos nor Ballengee have responded to a December 1, 2019 letter from Fish to Ballengee (Burgos was copied) warning of legal action for Ballengee's intentional interference with the Agreement.

60. Plaintiff will lose the future compensation created as a result of its efforts.

61. Plaintiff will suffer severe reputational harm as a result of losing Burgos as a client.

## FIRST CAUSE OF ACTION
(Intentional Interference with Contract)

62. Plaintiff incorporates and realleges the allegations above as if repeated below.

63. The Agreement is a valid and enforceable contract with valid and enforceable exclusivity covenants.

64. At all relevant times, and before they solicited Burgos, Defendants have known about the Agreement and that it was an exclusive Agreement in effect until at least May 22, 2023.

65. Defendants have intentionally interfered with the Agreement by intentionally inducing, condoning and supporting Burgos to breach his contractual obligations.

66. As a direct and proximate result of Defendants' interferences with the Agreement, Plaintiff has suffered and will continue to suffer severe and irreparable injuries, including financial harm, harm to its customer goodwill, market presence, reputation, and competitive position, unless they are enjoined from further engaging in any such conduct.

67. As a direct and proximate result of Defendants' tortious interferences with the Agreement, Plaintiff has suffered and will continue to suffer monetary damages, in an amount to

be determined at trial, and in excess of the jurisdictional minimum of this Court.

## SECOND CAUSE OF ACTION
(Unjust Enrichment)

68. Plaintiff incorporates and realleges the allegations above as if repeated below.

69. Plaintiff is entitled to payment for its services provided to Burgos that Burgos benefited from and now, without injunctive relief, all Defendants will benefit from.

70. Plaintiff demanded that Defendants not breach the Agreement and Defendants have refused.

71. Accordingly, Defendants have been unjustly enriched, at Plaintiff's expense, and Plaintiff is entitled to recovery against Defendants in an amount to be proven at trial, and in excess of the jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION
(*Quantum Meruit*)

72. Plaintiff incorporates and realleges the allegations above as if repeated below.

73. Plaintiff is entitled to future compensation for services rendered in connection with the Agreement.

74. Defendants are seeking to improperly withhold that compensation from Plaintiff when they will posses it.

75. Accordingly, Plaintiff is entitled to recovery against Defendants in an amount to be proven at trial, and in excess of the jurisdictional minimum of this Court.

## PRAYER FOR RELIEF

Plaintiff requests that this Court enter a judgment against Defendants and in favor of Plaintiff and award the following relief:

A.  an order awarding compensatory damages to Plaintiff in an amount to be proven at trial, and in excess of the jurisdictional minimum of this Court;

B.  an order awarding damages for future earning capacity;

C.  an order awarding punitive damages to Plaintiff in an amount to be proven at trial;

D.  an injunction forbidding Defendants from continuing to interfere with the Agreement and New York common law;

E.  an injunction ordering Defendants Ballengee and Pierson from engaging in interference with any contracts between any non-parties;

F.  an order awarding pre-judgment and post-judgment interest as provided for by law or allowed in equity;

G.  an order awarding Plaintiff its attorney's fees and costs; and

H.  such other and further relief as the Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff demands a jury trial for all triable issues.

Dated: Brooklyn, New York
December 24, 2019

STEINER & FISH P.C.

By:   _____/s/_____
         Norman Steiner
*Attorneys for Plaintiff*
130 Water Street
Brooklyn, New York 11201
(212) 869-1040
norm@steinerfish.com