UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                  :

MMA FIGHTER MANAGEMENT, INC.,        :

                                       :      **ORDER GRANTING MOTION**

                       Plaintiff,       :      **TO DISMISS**

    -against-                       :

                                         :      19 Civ. 11276 (AKH)

BALLENGEE GROUP, LLC, and LLOYD   :
PIERSON.                                 :

                                      :

                    Defendants.     :

                                         :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff MMA Fighter Management, Inc. ("Plaintiff" or "MMA Fighter

Management") brought suit against Defendants Ballengee Group, LLC ("Ballengee") and Lloyd

Pierson ("Pierson") (collectively, "Defendants") for intentional interference with contract, unjust

enrichment, and quantum meruit.  Plaintiff alleges that Defendants stole a client who is under

contract with Plaintiff.  Defendants move to dismiss for lack of personal jurisdiction and failure

to state a claim.  As explained herein, Plaintiff has failed to make out a *prima facie* case of

personal jurisdiction, and the case is dismissed on that ground.

## BACKGROUND

        MMA Fighter Management is a combat sports athlete representation business.

The business is incorporated in and has its principal place of business in New York.  Non-party

Shane Burgos, a New York resident, is a professional mixed martial artist who is highly ranked

in the Ultimate Fighting Championship ("UFC") featherweight division.  Beginning early in his

career, Burgos trained under Daniel "Tiger" Schulmann and received professional advice from

David Fish, the owner and president of MMA Fighter Management.

In 2013, Burgos entered into a Management and Representation Agreement (the "Agreement") with Schulmann Fight Management, LLC ("Schulmann Fight Management") and Plaintiff. The Agreement provided that Plaintiff would act as Burgos's manager, and that Plaintiff and Schulmann Fight Management would share compensation. The Agreement also contained exclusivity covenants. It remains in effect until 2023. Plaintiff has performed a multitude of services for Burgos, including negotiation of a UFC contract, negotiation of favorable fights, provision of legal advice, assistance with weight management, and handling of fight-week logistics.

This suit arises from Defendants' alleged interference in Plaintiff's relationship with Burgos. Defendant Ballengee is an athlete management business, and Defendant Pierson is one of its two members. Ballengee is registered in and has its principal place of business in Texas. Pierson and Ballengee's other member also reside in Texas. According to the Second Amended Complaint, Defendants "systematically and continually conduct business throughout New York." Second Am. Compl. ¶ 14.

Defendants were aware of the Agreement. In February 2019, Pierson, referencing Burgos and two other UFC athletes, told Schulmann that he could take Plaintiff's clients anytime he wanted. In November 2019, Burgos told Fish, Plaintiff's owner and president, that Burgos paid too high a percentage to Plaintiff and that other agencies charged less. Fish responded that he would match whatever other agencies charged and make other changes Burgos needed. Burgos said he had not yet decided what he was going to do but that he loved Fish no matter what. Fish and Burgos have not spoken since then.

While Burgos "has not expressed any formal decision to leave [Schulmann Fight Management] and Plaintiff's services," his "actions have suggested that he has breached the

Agreement." Second Am. Compl. ¶¶ 56-57.  He has told other individuals that he plans to join Ballengee.  On December 1, 2019, Fish sent a letter to Ballengee warning of legal action. Burgos was copied.  Neither Ballengee nor Burgos responded.  Plaintiff alleges that Defendants stole Burgos as a client, while knowing that Burgos had a contractual and fiduciary relationship with Plaintiff.  It claims that it will suffer loss of future compensation and loss of reputation as a result of Defendants' actions.

On December 19, 2019, Plaintiff filed the instant suit.  The first complaint was dismissed due to failure to allege the citizenship of MMA Fighter Management and Ballengee. *See* ECF No. 9.  Plaintiff filed the operative complaint, the Second Amended Complaint, on January 5, 2020.  *See* ECF No. 20.  The Second Amended Complaint includes claims for intentional interference with contract, quantum meruit, and unjust enrichment.  Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  In briefing on the motion, Plaintiff concedes that it is withdrawing the claims for quantum meruit and unjust enrichment.  Thus, the only claim for the Court to address is intentional interference with contract.

## DISCUSSION

### I.  Personal Jurisdiction

#### A.  Legal Standard

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction over each defendant.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations."

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (internal citations omitted).  In making its assessment, "the district court may consider materials outside the pleadings, including affidavits and other written materials."  *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).

> "[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  As to the first inquiry, "[t]here are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to [N.Y. C.P.L.R.] 301 . . . or specific jurisdiction pursuant to [N.Y. C.P.L.R.] 302."  *Thackurdeen v. Duke Univ.* 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (internal quotation marks omitted).  Plaintiff asserts that Defendants are subject to both general jurisdiction and specific jurisdiction in New York.

### B.  General Jurisdiction

The only alleged basis for general jurisdiction in the Second Complaint is the conclusory assertion that Defendants "systematically and continually conduct business throughout New York."  Second Am. Compl. ¶ 14.  Plaintiff further elaborates in an affidavit supporting its opposition to the motion to dismiss.  According to the affidavit, "Defendants have several clients in New York with whom they communicate and visit regularly," and "[i]n connection with their services, Defendants appear at numerous New York State venues."  Fish

Decl.[1] ¶¶ 5-6.  Plaintiff's allegations are insufficient to establish a *prima facie* case for general jurisdiction over either Defendant.

As to the corporate Defendant, Ballengee, C.P.L.R. 301, "as construed by the New York courts, permits a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction."  *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (internal quotation marks omitted).  Factors that courts generally consider in assessing general jurisdiction under C.P.L.R. 301 include "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York."  *Id.*  The only factor allegedly present here is the solicitation of business in New York.  Under New York law, "if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist."  *Id.* at 1043-44.  "[C]ourts require 'substantial solicitation' that is carried on with a 'considerable measure of continuity and from a permanent locale' within the state."  *Stark Carpet Corp. v. M-Geough Robinson, Inc.*, 481 F. Supp. 499, 505 (S.D.N.Y. 1980) (quoting *Bryant v. Finnish Nat'l Airline*, 208 N.E.2d 439, 441 (N.Y. 1965)).  Plaintiff provides a non-exhaustive list of five Ballengee clients who are in New York and claims that Ballengee attends numerous events New York.  These allegations do not establish substantial solicitation, and they certainly do not demonstrate that such solicitation is carried out from a permanent locale in New York.

---

[1] "Fish Decl." refers to the David M. Fish Declaration in Opposition to Motion to Dismiss, ECF No. 24.

The Court also lacks general jurisdiction over the individual Defendant, Pierson. "Where an individual defendant is acting on behalf of a corporation, he does not subject himself to personal jurisdiction under § 301." *San Diego Cty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 117 (S.D.N.Y. 2010). All of Pierson's alleged New York activity was conducted on behalf of Ballengee, not in an individual capacity. Thus, it is not a basis for jurisdiction under C.P.L.R. 301.

Even if Defendants were subject to general jurisdiction under New York law, exercise of general jurisdiction over them would not comport with due process. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). Similarly, for an individual, it is only in an "exceptional case" that "an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017). Ballengee is organized under the laws of Texas, it maintains its principal place of business in Texas, and both of its members, including Pierson, are domiciled in Texas. This is not an "exceptional case" justifying exercise of general jurisdiction over Defendants elsewhere. *See Reich*, 858 F.3d at 63 (finding individual domiciled outside New York was not "exceptional case" where he had business relationships in New York, owned apartment in New York, and spent small percentage of nights in New York); *SPV OSUS*

6

*Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015) (finding that "conduct[ing] substantial business" in New York was insufficient to establish exceptional case for general jurisdiction over foreign corporation).

### C. Specific Jurisdiction

Plaintiff asserts that Defendants are subject to specific jurisdiction in New York under C.P.L.R. 302(a)(3). Under that provision of New York's long-arm statute, a non-domiciliary can be subject to personal jurisdiction where he "commits a tortious act without the state causing injury to person or property within the state," and he "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." C.P.L.R. 302(a)(3).

This inquiry is naturally intertwined with the merits inquiry. "Because section 302(a)(3) requires the commission of a tort, it can confer personal jurisdiction over defendants only if [plaintiff] has sufficiently pled [its] tort claim." *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 432 (S.D.N.Y. 2003); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784-86, 794 (2d Cir. 1999) (remanding to district court to determine whether plaintiff sufficiently alleged actionable tort as necessary for jurisdiction under C.P.L.R. 302(a)(3)); *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2004 WL 2339759, at *6 (S.D.N.Y. Oct. 15, 2004) (declining to premise jurisdiction on insufficiently pleaded torts). Thus, to resolve the jurisdictional question, I turn to whether Plaintiff sufficiently pleads the tort of intentional interference with contract.

## II. Intentional Interference with Contract

"Under New York law, the elements of a cause of action for intentional interference with contract are '(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages.'" *Catizone v. Memry Corp.*, 897 F. Supp. 732, 738-39 (S.D.N.Y. 1995) (quoting *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993)). Plaintiff fails to plead the third element.

A claim for tortious interference with contract requires an "actual breach" of the contract by a third party. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006). Contrary to this requirement, Plaintiff appears to have brought this suit in anticipation of some future breach by Burgos. According to Plaintiff's own allegations, Burgos "has not expressed any formal decision to leave [Schulmann Fight Management] and Plaintiff's services." Second Am. Compl. ¶ 56.[2]

Seeming to contradict its own assertion that Burgos has not made a formal decision, Plaintiff claims in conclusory fashion that Burgos's "actions have suggested that he has

---

[2] Plaintiff does not specifically plead that Burgos committed anticipatory breach of contract, nor does it argue in its briefing that anticipatory breach of contract can form the basis for a claim of tortious interference. Still, one might wonder whether such a claim is available. One court in this district has suggested that it is. *See Artists Rights Enforcement Corp. v. Estate of Robinson*, No. 15 Civ. 9878, 2018 WL 1617890, *6 & n.9 (S.D.N.Y. Mar. 29, 2018) ("[T]he Court sees no reason why an anticipatory repudiation claim cannot form the basis of a tortious interference claim."). In any event, even if one could plead tortious interference with contract based on a third party's anticipatory breach, Plaintiff has not pled anticipatory breach here. For a claim based on anticipatory breach of contract, "the expression of intent not to perform by the repudiator must be 'positive and unequivocal.'" *Princes Point LLC v. Muss Dev. L.L.C.*, 87 N.E.3d 121, 124 (N.Y. 2017) (quoting *Tenavision, Inc. v. Neuman*, 379 N.E.2d 1166, 1168 (N.Y. 1978)). According to the Second Amended Complaint, Burgos's statements were equivocal. He allegedly said he did not know what he was going to do and had not made a formal decision to leave Plaintiff.

breached the Agreement."  Second Am. Compl. ¶ 57.  But "[s]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract."  *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).  The only potential support for the claimed breach is that Burgos has told other individuals he plans to join Ballengee.  However, Plaintiff has not explained what provisions of the Agreement Burgos breached by making such statements.  *See San Diego Cty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 129 n.7 (S.D.N.Y. 2010) ("Plaintiff must allege the specific provisions of the contract upon which the breach of contract claim is based . . . .").  In fact, Plaintiff does not even assert that Burgos's statements, standing alone, breach the Agreement.

Because Plaintiff fails to plead an actionable tort, Defendants cannot be subject to specific jurisdiction under C.P.L.R. 302(a)(3).  Though I need not reach Defendant's 12(b)(6) motion, I note that the deficiency in Plaintiff's pleading of intentional interference with contract would also be a sufficient basis for dismissing for failure to state a claim.

### III. Leave to Amend

Plaintiff has submitted a proposed Third Amended Complaint.  Plaintiff's proposed edits will not cure the above-mentioned deficiencies.  As to general jurisdiction, Plaintiff seeks to add the claims from its supporting affidavit about Defendants' New York clients and New York business trips.  As already discussed, these allegations are insufficient to confer general jurisdiction.  As to specific jurisdiction, the most relevant proposed edit is the assertion that "[a]s a result of Defendants' actions, Burgos breached the Agreement."  For the reasons discussed above, this bare assertion is insufficient to plead an actionable tort and thus insufficient to confer specific jurisdiction.  Because amendment would be futile, the case is dismissed with prejudice.  *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 283 (S.D.N.Y.

9

2010) (denying leave to file amended complaint where proposed amended complaint would not change analysis that led to dismissal).

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted, and the Second Amended Complaint is dismissed with prejudice.  The Clerk shall enter judgment for Defendants and close the case.

SO ORDERED.

Dated:      June 4, 2020                           ___/s/ Alvin K. Hellerstein___
            New York, New York                    ALVIN K. HELLERSTEIN
                                                   United States District Judge